FRANCIS L. SPRAGUE *v.* RANSOM ECCLESTON and EMMET BARROWS, survivors of LUTHER MARTIN, deceased.

(GENERAL TERM, SIXTH DISTRICT, MAY, 1869.)

A justice of the peace has no authority to make the preliminary examination, or to issue his warrant for the apprehension of the reputed father of a bastard, of his own motion, or otherwise than upon the application of the officers designated by the statute, made in the particular case, in which authority is expressly given to such officer or officers respectively to make it. (1 R. S., § 5, p. 642.)

Sprague *v.* Eccleston.

A mother, and her illegitimate child (born in Otsego county) being chargeable for their support, as paupers, upon the town of McDonough, Chenango county, and provided for by that town at the county poor house in the town of Preston, in Chenango county, the overseers of the poor of the town of McDonough applied to a justice of the peace, of their county, who went to Preston, took the examination of the mother, and thereupon issued his warrant, upon which the putative father was arrested, and brought before him.—*Held,* the justice acted without jurisdiction, and was liable for damages, as were also the overseers who induced him to act.

It seems that if the overseers had brought the mother into the town of McDonough, and had her examination taken there, the plaintiff might have been properly arrested.

The court excluded evidence of the advice of counsel offered in mitigation, but charged the jury that it was not a case for smart money; and the jury gave a verdict for substantially the actual damages proven.—*Held,* no error was committed to the prejudice of defendants.

ACTION for assault and battery, and false imprisonment. One Lydia A. West was delivered of a bastard child, in Otsego county. She was a resident of the town of McDonough, in Chenango county, to which she returned after the birth of the child, and was supported by that town at the county poor house, in the adjoining town of Preston. The defendant, Martin (deceased since the trial), made application to the defendant, Eccleston, a justice of the peace of the county, and the justice went to said town of Preston, and there took Mrs. West's examination, in presence of Martin, and the defendant, Barrows, who were overseers of the poor of the said town of McDonough. The justice issued his warrant on the affidavit of Mrs. West, and plaintiff was arrested as the reputed father of the bastard, and brought before the justice, but was discharged because the evidence of the mother of the child could not then be obtained. On the same day that plaintiff was discharged, he was again arrested, on a warrant issued on the same application and affidavit, and was discharged for the same reason. At the time the application was made, and Mrs. West's examination taken, and the first warrant issued, Mrs. West was not at the poor house, but was working at one Coriel's, in said town of Preston, and had her child there with her. No question was raised as to the mere form of the application, or examination, or warrant.

Sprague *v.* Eccleston.

The action was tried at the Chenango Circuit, in February, 1868. The defendants offered, in substance, to prove that the justice consulted with counsel, who was employed by the overseers of the poor of the town of McDonough, in the matter, and was advised that he had the right to issue the second warrant. The offer was rejected, and defendants excepted.

The judge charged the jury, in substance, that the proceedings before the justice, and the warrants issued by him, were no justification to the defendants, to which portion of the charge defendants excepted.

The judge instructed the jury, in substance, that if the overseers of the poor had taken Mrs. West and her child to the town of McDonough, and there made the complaint to the justice, they might have had the plaintiff arrested, to which the defendants' counsel excepted.

The judge held that the defendants were liable because Mrs. West's affidavit was taken in the town of Preston, which holding was covered by one of defendants' exceptions.

The judge instructed the jury that the defendants were not to be visited with smart money; but that the jury should render such a verdict as, under the circumstances, they deemed the evidence warranted.

The jury rendered a verdict for plaintiff, for fifty-six dollars damages. The exceptions were directed to be heard, in the first instance, at the General Term; and defendants moved for a new trial on their exceptions.

*J. W. Glover* and *Horace Packer*, for the plaintiff.

*Solomon Bundy*, for the defendant Eccleston.

*Henry R. Mygatt*, for the defendant Barrow.

Present—BALCOM, BOARDMAN and PARKER, JJ.

By the Court—BALCOM, P. J. The bastard child of Lydia A. West was born, according to the evidence of Susan Layton, in the town of Richfield, in the county of Otsego, on the 21st

day of August, 1864. And the statute is that "the reputed father and mother of every bastard shall be liable for its support; in their default or inability, it shall be supported by the county or town in which it shall be born, as hereinafter provided." (2 R. S., 5th ed., 906, § 2.) According to this statute, the town of Richfield, or the county of Otsego, was liable to support this bastard child. But its mother, subsequently, was a pauper in the county of Chenango, and she had her bastard child with her. The statute then applicable to the case, is as follows: "If any woman shall be delivered of a bastard child, which shall be chargeable, or likely to become chargeable to any county, city or town; or shall be pregnant of a child likely to be born a bastard, and to become chargeable to any county, city or town; the superintendents of the poor of the county, or any of them, or the overseers of the poor of the town or city, or any of them, *where such woman shall be,* shall apply to some justice of the peace, of the same county, to make inquiry into the facts and circumstances of the case." (2 R. S., 5th ed., 907, § 5.) As Mrs. West was not in the town of McDonough at the time the overseers of the poor of that town applied to Justice ECCLESTON to make inquiry into the facts and circumstances of the case, they were not authorized to make such application; and as she was not in that town at the time she was examined on oath by Justice ECCLESTON, he was not authorized, upon such application, to go into the town of Preston, where she was, and take her examination. No persons, except the overseers of the poor of the town of Preston, and the superintendents of the poor of the county, could apply to a justice of the peace of the county to make inquiry into the facts and circumstances of the case while Mrs. West remained in the town of Preston. But neither of those officers applied for the examination. Justice ECCLESTON was not empowered to make the examination on his own motion; and he had not jurisdiction to make the examination or to issue any warrant for the apprehension of the reputed father of the bastard, upon the application of the overseers of the poor of the town of McDonough. And

as he acted without jurisdiction, he, and the overseers of the poor of the town of McDonough, who induced him thus to act, were liable for the arrests and imprisonments of the plaintiff, which they caused by their proceedings.

It was held in *Wallsworth* v. *McCullough* (10 Johns., 93), that a justice of the peace is liable to an action for false imprisonment for issuing a warrant, by virtue of which the putative father of a bastard child is arrested, upon the application of an attorney who was not authorized by the overseers of the poor to make the application.

That case sustains the charge to the jury in this, that the defendants were liable to the plaintiff for his arrests and imprisonments. (See, also, *Reynolds* v. *Orvis*, 7 Cow., 269; *Bigelow* v. *Stearns*, 19 Johns., 39.)

There was no evidence to impute bad faith to the defendants; and the proper inference from the evidence is, that they acted honestly, and under the belief that all they did, in the proceedings against the plaintiff, was in the proper discharge of their duties as public officers.

The evidence showed that the plaintiff paid thirty-three dollars, or over, to counsel in the proceedings in which he was arrested, besides some other expenses; and that his time was worth $2.50 per day, during the days he was under arrest.

The verdict of the jury was for only fifty-six dollars damages; and I am of the opinion the jury only awarded actual damages to the plaintiff.

If I am right in this conclusion, the supposed error of the judge, in rejecting the defendants' offer to show that Justice Eccleston was advised, by counsel employed by the other defendants, that he had a right to issue the second warrant, did not affect the defendants on the question of damages.

The judge charged the jury, in substance, that the proceedings of the defendants were properly in evidence for the purpose of showing that they acted in perfect good faith, and in pursuance of what they supposed was their duty, and that, therefore, they should not be visited with smart money; and

I think the jury did not include any vindictive or punitory damages in their verdict.

My conclusion is, that no error was committed on the trial to the prejudice of the defendants; and that their motion for a new trial should be denied, with costs.

So decided.