MARY VETTEN

v.

JOHN WALLACE.

*Bastardy—Support of Child—Recovery for—Married Woman—Pleading.*

1. At common law the father of a bastard child was under no obligation to support the same. The liability is statutory, and exists only when the mother is an unmarried woman.

2. The doing, or consequence of an unlawful act, can not be made the consideration of a contract.

3. The presumption is that a child born in wedlock is legitimate, and this presumption the mother will not be heard to deny.

4. An allegation that a certain person is married is the same as one setting forth that he is *lawfully* married.

5. Where, in an action by a married woman to recover for the support of an alleged bastard child, from the father thereof, the defendant showed by his plea that the plaintiff was the mother of the same, and had at the time of its birth a husband, such plea effectually meets an allegation in the declaration that defendant was the father.

[Opinion filed February 2, 1891.]

IN ERROR to the Circuit Court of St. Clair County; the Hon. B. R. BURROUGHS, Judge, presiding.

Plaintiff in error brought this suit and in her declaration averred that defendant in error was the father of a bastard

child of the age of two years in March, 1889, and that he proposed if plaintiff in error would feed, clothe and care for said bastard child, he would pay her what it was reasonably worth; that she accepted his proposition and did feed, clothe and care for the child for a period of twenty-five months and that it was reasonably worth $10 per month, which sum the defendant in error refused to pay, etc.

The defendant pleaded the general issue and this special plea: " And now comes the defendant, and for further plea in his behalf, says, *actio non*, for that he says the plaintiff in the above entitled cause, the said Mary Vetten, is the mother of the child mentioned in said declaration and alleged to be a bastard, and the said plaintiff is now and was at the birth of said child, a married woman, having been on, to wit, the 11th day of March, 1873, in the county of Madison, in the State of Illinois, married to one Henry Koch, and that the marriage relation still exists between the plaintiff and the said Koch, and this the defendant is ready to verify."

A demurrer was interposed to this special plea, which was overruled by the trial court, and the plaintiff electing to stand by her demurrer to this plea, judgment was entered on demurrer for defendant. Plaintiff brings the case to this court and assigns as error the overruling the demurrer to the special plea.

Mr. William J. Clucas, for plaintiff in error.

We concede that at common law a married woman was not a competent witness to prove non-access by the husband, but our statute declares that " no person shall be qualified as a witness in any civil action, suit or proceeding, etc., except as hereinafter stated, by reason of his or her interest in the event thereof as a party or otherwise," etc.   Sec. 1, Chap. 51, Starr & C. Ill. Stats.

We contend that this statutory provision changed the common law rule, and that a married woman is now a competent witness, and may by her own testimony bastardize her child or prove the non-access by the husband.

In Cuppy v. The State, etc., 34 Ind. 389, which was a pros-

ecution for bastardy, the relatrix was, a married woman residing with her husband; she was permitted to prove non-access by the husband, etc. The court said: "A witness declared competent by statute is to be regarded as any other witness, and restrictions imposed by the common law can not be applied as restricting her testimony in the face of the express letter of the statute." Starkie on Evidence, 217.

But be that as it may, the solution of the question does not necessarily arise in this case, for the reason that the testimony of the plaintiff in error is not needed.

It is a rule in pleading, that what is alleged by one party in his pleading and not denied by the other, is considered as admitted; hence, the charge in the declaration as aforesaid, and its admission by defendant, made out plaintiff's case without resorting to her or other testimony to prove the allegations in the declaration, and the absence of the husband for more than ten years previous and up to the time the child was born. The child being a bastard, and defendant its father, being admitted of record, the plea to prevail should have alleged that plaintiff had been lawfully married.

It may be true that plaintiff was married to Koch as stated in the plea, and yet such marriage not been lawful; for instance, the husband might have been a married man at the time of the marriage with plaintiff; if so, surely the child in question is a bastard.

The plea fails to allege that plaintiff was lawfully married; such allegation of lawful marriage is essential and is required in a bill for divorce and all other pleadings where a marriage is in question. Bishop on Marriage and Divorce, Vol. 2, Sec. 331.

Surely, the allegation ought to be in a plea, and if denied, must be sustained by proof to make such plea a defense, if a defense at all; the lawful marriage not being alleged in the plea, the presumption (being against the pleader) is that the marriage was not lawful, and therefore the plea no defense, and for that reason, if none other, the demurrer ought to have been sustained.

It is said that a bastard is "*filius nullius*," and therefore

Vetten v. Wallace.

not entitled to support from any man. Whatever the rule may be where there is no proof to identify the father, it is certain that the rule does not apply to the facts disclosed in this cause, for here we have the undisputed facts: First, that the child is a bastard; second, defendant's admission that he is its father.

The facts admitted, the law of nature, as well as the law of the land alike, require the putative father to support and maintain his minor child. In Glidden v. Nelson, 15 Ill. App. 297, the court say: "But upon the strength of the natural or moral obligation arising out of the relation of the putative father to his child, an action at common law lies for its maintenance and support upon an express promise." Wiggens v. Keiser, 6 Ind. 252, is a case in point.

In Todd v. Weber, 95 N. Y. 181 (see American Reports, Vol. 47, page 24), the court says: "Indeed, it has never yet been held that there was anything illegal in an undertaking by a putative father to support his bastard, or pay a sum of money in consideration of such support being furnished by another, though that other person was the mother of the child; upon principle and authority such a promise must be regarded as valid.

Messrs. KOERNER & HORNER, for defendant in error.

At common law a bastard child was "*nullius filius*," and could inherit from neither its father nor its mother.

In this State, by statute, it is capable of inheriting from the mother, and through her.

The mother is given the custody, care and nurture of the child, and she can recover the custody from the father and can inherit from the child.

A father can not inherit from his bastard offspring.

To relieve the mother from the entire burden of supporting her illegitimate offspring, and to prevent the child from becoming a charge upon the county authorities, the Illinois statute provides, Sec. 1, Chap. 17, Starr & C. Ill. Stats., that an unmarried woman who shall be pregnant, or delivered, etc., shall proceed by an action *quasi* criminal in its nature,

and compel the putative father to support the child for a period of nine years, requiring a bond as security for a compliance with the judgment of the court. Such is in substance the statute of most of the States, differing, however, materially from the statute law of Indiana, which law allows the bastardy proceeding under the statute to be commenced by a married female complainant.

Based upon this statute is the opinion in Cuppy v. The State, etc., 34 Ind. 389, cited by plaintiff in error.

Our statute has not only failed to give relief to a married woman who is the mother of a bastard child, but goes further and excludes her from all relief, by expressly limiting the action to an unmarried female.

In the action of the Legislature of this State, in expressly excluding a married woman from any benefit under the statute, we find a manifestation of that spirit which pervades the common law, and which spirit became so firmly established as to give birth to the principle which has become axiomatic, viz., "a married woman is estopped from bastardizing her own issue."

It is a conclusive presumption of law, as against husband and wife, that a child born during marriage is legitimate. Greenleaf on Evidence, Vol. 1, Para. 28, p. 37.

"For reasons of public decency and morality, a married woman can not say that she had no intercourse with her husband, and that her offspring is spurious." 1 Greenleaf on Evidence, Para. 344, p. 444; Dennison v. Page, 29 Penn. 420; Parkens v. Day, 15 N. H. 45; People v. Ontario, 15 Barb. 286.

And this refusal to allow a married woman to testify as to the spuriousness of her own offspring was not the result of the common law rule of evidence, which prevented a party interested, or a party to a suit, from testifying, and which disability is removed by the statute law removing the disability of parties plaintiff and defendant, as is urged by the plaintiff in error. But this estoppel arose from sentiments of common decency, public policy and religion.

In Drennan v. Douglas, 102 Ill. 341, the court says: "The violation of the marriage obligations by a married woman, by committing adultery and becoming pregnant by one not

Vetten v. Wallace.

her husband, under an alleged promise of marriage, can not be made the foundation for a consideration to support a promise by the seducer to make a will giving her and the child all his property."

The court further says that the complainant "violated the laws of the State and was guilty of adultery, and then in turn undertakes to make these violations of duty and law the foundation for a consideration to support a promise, which she calls upon a court of equity to enforce. A court would stultify itself should it grant relief under such circumstances."

It is a fundamental principle of the law of contracts, that the doing of, or the consequences arising from an unlawful act, can never be the consideration for a contract.

The matter arising from the declaration and the first special plea in this case clearly show a case within the meaning of the aforesaid law.

A married woman is unfaithful to her marriage vows, she commits adultery, is therefore guilty of a crime, and then comes into court and seeks to make the consequences of that crime the foundation for an action at law.

The point is made by plaintiff in error that the plea should have charged a lawful marriage, and that the plaintiff might have been married and yet not lawfully married. We hardly suppose that the point is made seriously, and rather hesitate to enter into an argument upon it before this court.

We would answer that the word marriage is a word of law; there can be no marriage unless lawful. An unlawful marriage is an impossibility. If any of the legal requisites are wanting in an executed contract of marriage, at law it is no marriage.

It is very true that the father is bound by an express promise, and sometimes by an implied promise, to support a bastard child. The authorities are quite clear, if the father recognizes the child as his own, assumes the custody of the child, and exercises control over its person, that he is liable upon an implied promise for necessaries furnished to the child. He is likewise liable to the mother, or to a third person, upon an express promise.

But we are unable to find any authority overruling the common law principle requiring the plaintiff, in a proceeding of this nature, to be an unmarried woman.

In Glidden v. Nelson, 15 Ill. App. 297, the plaintiff was an unmarried woman. It sometimes happens in collateral proceedings, the question of legitimacy is inquired into to settle disputes as to the rights of heirs even when the mother is married at the time.

In cases of this character it is allowed to prove the absence or non-access of the husband, or even the husband's impotency can be proved. But the rules governing these cases are very different from those governing the one at bar.

REEVES, J. By the demurrer it was admitted that the plaintiff in error was the mother of the alleged bastard child, and that she was at the time of the birth of the child the wife of Henry Koch, to whom she was married March 11, 1873. The child was born, according to the averments of the plea, in wedlock, between plaintiff in error and Henry Koch. If defendant in error was the father of the child, plaintiff in error must have been guilty of adultery. Taking the declaration and plea together, it is manifest that the consideration for the promise alleged in the declaration was the fact that the plaintiff in error was the mother, and defendant in error was the father of the child.

The father of a bastard at common law was not under any legal obligation to support his illegitimate child. He is only made liable under our statute where the mother is an unmarried woman. The alleged bastard child, the support of which was the basis of the alleged promise by defendant in error to pay, was the result of the criminal intimacy of plaintiff in error, a married woman, with defendant in error, so that the consideration of the promise alleged is shown by the plea to involve a criminal offense on the part of the person to whom the promise was made. The doing of an unlawful act, or the consequence of an unlawful act, can not be made the consideration of a contract. As was said in Drennan v. Douglas, 102 Ill. 341, a married woman can not make her own

Vetten v. Wallace.

violation of duty and law the foundation for a consideration to support a promise. Again, a married woman will not be permitted to bastardize her own offspring, born in wedlock.

" For reasons of public decency and morality, a married woman can not say she had no intercourse with her husband, and that her offspring is spurious." 1 Greenleaf on Ev., Sec. 344. This prohibition does not apply to her competency as a witness, but is a rule of law governing any right of action which she may set up, involving such bastardism of her own offspring, born in wedlock. The presumption is that a child born in wedlock is legitimate, and this presumption the mother will not be heard to deny. 1 Greenleaf on Ev., Sec. 283.

It is urged that the plea should have alleged that the plaintiff in error was lawfully married to Henry Koch. There can be no marriage unless it be a lawful one, hence the allegation that plaintiff in error was married to Henry Koch was equivalent to saying she was lawfully so married. A traverse of the plea would have enabled plaintiff in error to show that at the time of the birth of the child she was not the wife of Henry Koch. This suit was brought to recover for necessaries furnished by plaintiff in error to the child. These necessaries it was the duty of her and her husband under the law to furnish. This case differs from Todd v. Weber, 95 N. Y. 181, in this, that the mother of the child was an unmarried woman, and the recovery was had by persons who were under no legal obligations to support the child, and was based upon the fact that the putative father recognized the child as his, and promised these people if they would care for and support the child, he would pay them for such care and support.

It is urged that by the plea, defendant in error admitted he was the father of the child, as averred in the declaration. If the plea was true, then this allegation in the declaration was not true; at least the plaintiff would not be heard to make such an allegation. When the defendant by his plea showed that plaintiff was the mother of the child, and was at the time it was born the wife of Henry Koch, this effectually, under the law, met the allegation of the declaration that defendant was the father of the child. The judgment of the Circuit Court is affirmed. *Judgment affirmed.*