FLINT v. PIERCE.

(Supreme Court, Special Term, Erie County. July, 1912.)

1. BASTARDS (§ 17*)—CONTRACTS FOR SUPPORT—CONSIDERATION FOR CONTRACT TO SUPPORT LEGITIMATE CHILD.

Where a child born to a woman in wedlock is the child of her husband, a contract by which another man agrees to pay for its support is without consideration.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 24–27; Dec. Dig. § 17.*]

2. BASTARDS (§ 3*)—BIRTH DURING WEDLOCK—PRESUMPTION OF LEGITIMACY.

The birth of a child during the continuance of a valid marriage raises a conclusive presumption of its legitimacy, in the absence of a showing that the mother and her husband had no access to each other at any time when he could have been begotten.

[Ed. Note.—For other cases, see Bastards, Cent. Dig. §§ 4, 5; Dec. Dig. § 3.*]

3. WITNESSES (§ 57*)—COMPETENCY OF WIFE TO TESTIFY—NONACCESS.

In such case the mother would be incompetent to prove nonaccess of her husband.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 157–159; Dec. Dig. § 57.*]

4. WITNESSES (§ 57*)—COMPETENCY OF WIFE TO TESTIFY—NONACCESS.

The mother of a child born during wedlock is precluded by public policy from asserting its illegitimacy to show consideration for a contract with a man other than her husband, providing for the payment of a certain monthly sum for its support.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 157–159; Dec. Dig. § 57.*]

Action by Arvilla Flint against Ray V. Pierce. On demurrer to plaintiff's reply. Sustained.

Abbott & Abbott and Bartlett & Chamberlain, for plaintiff.
Morey, Bosley & Morey, for defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

BROWN, J. Plaintiff in her complaint alleges that in 1884, in consideration of the plaintiff's supporting, maintaining, furnishing a home for and educating a child of the defendant during its minority, the defendant agreed to pay the plaintiff the sum of $30 dollars per month during the plaintiff's lifetime; that plaintiff performed her part of such contract; that defendant paid such sum for a number of years, has omitted to pay $5,810 due on such contract; and plaintiff demands judgment for the same. Defendant for answer denies all the allegations of the complaint; alleges that the stated cause of action did not accrue within six years before the commencement of the action; alleges that the plaintiff is the mother of the child whose name is Howard Flint; that at the time of the birth of the child the plaintiff was, and for more than one year prior thereto had been, the wife of one Alonzo Flint, and continued to be such wife up to 1896, when her husband died; that such child was the son of plaintiff and her husband, Alonzo Flint; that the alleged agreement set forth in the complaint is without consideration; that the same is void as against public policy and good morals. By the terms of an order granted March 28, 1912, the plaintiff was required to make reply to defendant's answer, stating: First, facts claimed to constitute an answer, defense, or avoidance of the statute of limitations as to any claimed monthly payments preceding the period of six years prior to the commencement of the action; and, second, admitting or denying the allegation as to the maternity of the child, the plaintiff's marriage to Alonzo Flint, and the child being the son of plaintiff and Alonzo Flint. In pursuance of this order, plaintiff made reply: First, that the amount due prior to the six-year period is a continuing account and obligation; second, admitting all the allegations of the answer as to the maternity of the child, the plaintiff's marriage with Alonzo Flint and that she continued to be his wife until his death in 1896, denying that the child was the son of plaintiff and Alonzo Flint, and alleging that the child was the son of the plaintiff and the defendant. To this reply the defendant demurs, upon the ground that the matters set forth therein are insufficient in law to constitute an answer to the facts set forth in defendant's pleading. The issues of law raised by the demurrer present the question whether upon the pleadings the plaintiff has stated facts constituting a cause of action.

[1] It appears from the pleadings that the plaintiff and one Alonzo Flint were married as early as November 28, 1872, and that they continued thereafter to be husband and wife until 1896, when Alonzo Flint died; that on November 28, 1873, there was born to the plaintiff a son. If this child was the son of Alonzo Flint, then the alleged agreement by the defendant to pay the plaintiff $30 a month during her lifetime for the support, etc., of the child during its minority was without any consideration and was void. If the child was the son of the defendant, then such agreement was founded upon an alleged good consideration and is claimed to be valid. Moncreif v. Ely, 19 Wend. 405; Hook v. Pratt, 78 N. Y. 371, 34 Am. Rep. 539; Todd v. Weber, 95 N. Y. 181, 47 Am. Rep. 20; Rosseau v. Rouss, 180 N. Y. 116, 72 N. E. 916.

The defendant contends that, it appearing that the child was born to the plaintiff during the continuance of a valid marriage with Alonzo Flint, it is conclusively presumed as against the plaintiff to be a legitimate issue of that marriage, and that good morals, decency, and public policy forbid the plaintiff's claiming that it is illegitimate; that no cause of action in her behalf, founded upon the allegation of the mother that her child is not the child of her husband, can exist; that the courts will not permit a married woman to bastardize her own issue.

The plaintiff contends that the presumption of legitimacy of a child born to a married woman is simply a rule of evidence that can be rebutted by proof of nonaccess by the husband, and that public policy is more concerned in compelling performance of a contract by a putative father to pay the mother of an illegitimate for its care and maintenance, even though she be a married woman, than it is in denying to her the right to prove such contract by competent evidence to be founded upon a good consideration.

[2, 3] The fact that any person was born during the continuance of a valid marriage between his mother and any man is conclusive proof that he is the legitimate child of his mother's husband, unless it can be shown that his mother and her husband had no access to each other at any time when he could have been begotten; regard being had both to the date of the birth and to the physical condition of the husband. Cross v. Cross, 3 Paige, 139, 23 Am. Dec. 778; Van Aernam v. Van Aernam, 1 Barb. Ch. 375; Caujolle v. Ferrie, 23 N. Y. 90; 1 Greenleaf, § 28. All authorities agree that the plaintiff would be incompetent to establish nonaccess of her husband.

[4] But even assuming that nonaccess may be proved by competent evidence, and the presumption of legitimacy rebutted, does it necessarily follow that a married woman may prosecute in her name and for her benefit a cause of action founded upon the illegitimacy of her issue born during wedlock? It was held in one case (Eloi v. Mador, 1 Rob. [La.] 581, 38 Am. Dec. 192) that it was contrary to good morals for a son, having been born in marriage, to repudiate his own legitimacy; he was not permitted to bastardize himself; neither his mother, his heirs, nor himself could contest his legitimacy, he having been born in wedlock. It is true that the heirs of a father may contest the legitimacy of a supposed son, but no authority has been furnished holding that a mother has been listened to by any court upon her complaint, petition, affidavit, declaration, or plea seeking enforcement of rights personal to herself to urge that a son born to herself during wedlock was not the child of her husband. It is claimed that the statutory bastardy proceedings of the Criminal Code furnish authority for such a contention, but it is believed that no warrant for such a claim can be therein found. While section 838 of the Code of Criminal Procedure does define a bastard to be a child who is begotten and born, first, out of lawful matrimony, second, while the husband of its mother was separate from her for a whole year previous to its birth, or, third, during the separation of its mother from her husband pursuant to a judgment of a competent court, yet

the mother cannot institute any proceedings for her benefit there-under. This definition does comprehend the birth of a child to a married woman in wedlock and proclaims such child an illegitimate when born after one year's absence of the husband, yet by section 840 it is only the poor officers who can make any complaint against the putative father. Sprague v. Eccleston, 1 Lans. 74. The mother has no pecuniary claim on the father in respect to a child born a bastard. She has no power at common law or under the statute of this state to compel the father to support her during confinement or to support the child after its birth. People v. Shulman, 8 App. Div. 514, 40 N. Y. Supp. 779. If the right to prosecute a cause of action by a married woman, based upon the illegitimacy of her child born in wedlock, against the putative father for her benefit, is to be tested by the existence of law permitting her to institute bastardy proceedings against the putative father, then it is seen that she is without remedy. There was no liability under the common law of a putative father of a bastard for its support or maintenance. People v. Landt, 2 Johns. 375; Carpenter v. Whitman, 15 Johns. 208; People v. Kling, 6 Barb. 366; Matter of Doyle, 1 Clarke Ch. 154. It is seen, as above stated, that the mother has no authority to make a complaint for the institution of bastardy proceedings under the statute. In Illinois a statute provides that the mother must be single in order to make the complaint to institute bastardy proceedings (Vetten v. Wallace, 39 Ill. App. 390), in which case it was sought by a married woman, the plaintiff, to enforce a contract with the putative father, the defendant, for the support of her child born in wedlock; that court holding that the fact that the plaintiff was the mother of the child and was at the time it was born the wife of one Koch effectually met the allegation of the plaintiff that defendant was the father of the child. The court used the following language:

"Again, a married woman will not be permitted to bastardize her own offspring born in wedlock. For reasons of public decency and morality a married woman cannot say that she had no intercourse with her husband and that her offspring is spurious. This prohibition does not only apply to her competency as a witness, but it is a rule of law governing any right of action which she may set up involving such bastardism of her own offspring born in wedlock. The presumption is that a child born in wedlock is legitimate, and this presumption the mother will not be heard to deny."

No authority has been cited or found that bears on the question presented. Cases of divorce or actions by unmarried women are of no aid in solving the problem; bastardy proceedings instituted by poor authorities are of no help; decisions that the promise by a putative father of an illegitimate to pay for its support can be enforced are of no avail. Because it has been held that a woman unmarried at the time of the birth of her illegitimate child can enforce the agreement to support it furnishes no reason for holding that a married woman can enforce an agreement made by a putative father to support her child born during wedlock. All the cases cited are claims, actions, proceedings, etc., by single women to enforce agreements against putative fathers of their illegitimate children, or bastardy proceedings brought by poor authorities, or divorce cases. They are

all based upon some statute or founded upon contract the enforcement of which does not offend public policy. The right of a married woman to bastardize her own child born in lawful wedlock, and thus violate good morals, domestic decency, respectability of married life, security of the home, and the sacredness of marital motherhood, was not involved. It is not repugnant to public policy or good morals to enforce a contract made by a single woman with the father of her illegitimate child and thus relieve the public from the burden of its support. A single woman has no husband to support her children; she has no husband to support herself; she has no claims upon the father of her children for her own support. The agreement of a father to pay a single woman for the care and support of their child does not infringe upon the rights of any husband. To say that a married woman may enjoy the marital obligation of her husband to support herself and her children and at the same time compel a paramour to perform his agreement to pay her $30 a month during her lifetime for the support of a child alleged to have been begotten by the paramour during wedlock with her husband is pretty nearly saying that a woman may have two husbands and compel them both to support her; it is saying that a woman may compel two men to support her, one because of a marriage ceremony, and another because her violation of those marriage vows has furnished a good consideration for some other man's promise to support her. For 23 years after the birth of the alleged illegitimate this plaintiff had a husband who under the law and the admitted facts was bound to support her. He died in 1896 her lawful husband. It is now 39 years since the birth of the child that for that time has been presumed to be the legitimate son of the plaintiff and her husband, Alonzo Flint. The name Howard Flint was given to their son by plaintiff and her husband. To permit the enforcement of this alleged contract under the circumstances is so shocking to good morals and decency that it should be done only by the compelling force of well-recognized authority.

In the absence of such precedent, the conclusion is reached that good morals and public policy forbid that plaintiff be permitted to assert the illegitimacy of her son, born in lawful wedlock, to furnish an alleged consideration for the contract sued upon; that the legitimacy of her own son is so conclusively presumed that she cannot rebut it and thereby secure a cause of action.

This conclusion obviates the necessity of considering the application of the statute of limitations to plaintiff's claim.

The defendant's demurrer is sustained.