Carswell, J.
(dissenting). I dissent and vote to reverse the order and to direct a new hearing for the following reasons: It was undisputed, early in the hearing, that the three-year-old child Avhose custody was sought to be changed was illegitimate. The child was born before the invalid marriage between respondent and its mother. Its custody could be disturbed lawfully only in the event it appeared that the mother was maintaining the child in a place or manner which imperiled the child’s moral or physical welfare. Hence the only proper subject of *88 inquiry was the propriety of the child’s mother continuing to have custody. Instead, because of the course pursued by respondent’s counsel, the only issue litigated was whether Meredith, the respondent, was the father of the child. It was mistakenly assumed that if that issue were decided in his favor, he would be entitled, as of right, to the child’s custody.
This was an erroneous approach, in disregard of fundamental legal rights. The father of an illegitimate child has no rights, as against the mother, in respect of its custody. (Matter of Doyle, 1 Clarke Ch. 154; Robalina v. Armstrong, 15 Barb. 247; People v. Landt, 2 Johns. 375; Carpenter v. Whitman, 15 Johns. 208; People v. Kling, 6 Barb. 366; 7 Am. Jur., Bastards, §§ 61, 63.) The mother of an illegitimate child ordinarily has an absolute right to its custody, care and control against the claim of any putative father or a stranger. She only loses that right when she has been guilty of conduct which necessitates a change of custody of the child because she is presently maintaining the child in an improper manner and she is, therefore, unfit. The inquiry was not directed to this issue on the hearing. The entire inquiry was directed to determining the question of paternity; It was the decision of that question that was the determinative factor as to whether or not custody was to he disturbed. The court stated “ I want to be satisfied, before you can succeed. I want to be satisfied by a fair preponderance of the evidence that your client [respondent] is the father. If I find your client is the father, of course I shall give him the child. That is the way it appears to me at the moment. ’ ’ The court later directed a blood test. He observed that without the test “ I would be inclined to believe ■ * '* * the petitioner [Meredith] ’’’ on the issue of paternity/ He constantly recurred to this element of paternity. He asked: “ He said you told him you were not the father of the child. Did you do that? ” and the respondent said “ No.” When all the parties rested the court was still discussing the- blood test (later found to be negative) in its relation to the issue of paternity. It is thus as plain as a pikestaff that the court was concerned only with the issue of paternity and had concluded that if he resolved that question in favor of the respondent, custody of the child would be changed. If he had decided that (for the time being irrelevant) issue against respondent, he apparently would not have disturbed custody. The court clearly did not have in mind the fundamental rights of the mother, and ruled on the issue of custody in disregard of the fact that the issue of paternity was not con *89 trolling on the issue of custody. The blighting and baneful effect of the court’s preoccupation with the issue of paternity on the exercise of discretion is reflected in the order made.
The scope and effect of an adjudication is determined by the terms of the order or judgment. Here the order purports to give custody to the mother during part of the year. This is an adjudication that the mother is a fit person. If the child will not be harmed physically or morally by part-time custody, it will not be harmed by complete custody. Since the mother is fit to have partial custody, under long settled law she is entitled, as an absolute right, to have complete or entire custody. If she is unfit, she should have no custody, only visitation rights. Divided custody is lawfully given only where both parents are fit persons and validly married. It has been given only where legitimate children or children deemed or presumed to be legitimate were involved, as neither parent has a right superior to the other. «(Domestic Relations Law, § 70.) There is no authoritative ease to the contrary. Where the child is illegitimate and the mother has been found fit to have custody, the putative father is not entitled to any custody, partial or otherwise. (See cases, supra.) The reason for depriving the father of an illegitimate child of custody is rooted in public policy. If such a father were given the same rights as are accorded by law to a father of a legitimate child, then the flouting of public morality would be encouraged, despite the policy of the law to discourage such flouting. This public policy, recognized from time immemorial, is violated by the order herein.
Here the mother was entitled to and had the custody of the child in the first instance. If, perchance, on a proper hearing she were found to be unfit, then the child should go to a person or a home or a custody in New York where the right of visitation of the mother would not be destroyed. There is nothing in this record establishing that she had forfeited her rights to visitation, independently of her rights to custody. Certainly the child should not be given, nominally to a putative father, but actually to the Florida parents of such a putative father, and taken without the State, when it appears that his parental status is questionable and that such a drastic disposition will destroy any enforcible unforfeited visitation or custody rights of the mother. The furnishing of a bond in a nominal amount will not insure the preservation of the mother’s rights. She should not be deprived of any of them except on a hearing confined to the issue of the present ability to furnish the child with proper upbringing *90 and care. There has been no such hearing. The fact that a stranger might be able to furnish better quarters and bring the child up in greater affluence is not a determinative factor. (Robalina v. Armstrong, 15 Barb. 247, 249, supra.)