ELMER LINCOLN *vs.* OLIVER S. WILBUR.

Bristol.    Oct. 24, 1877.— Aug. 31, 1878.    LORD & SOULE, JJ., absent.

Under the U. S. St. of June 22, 1874, § 12, knowledge, on the part of a purchaser, that the sale was in fraud of the seller's other creditors, is necessary to set aside the sale as to him.

On the issue whether a sale made by a person within four months of his bankruptcy was in fraud of his creditors, evidence of what he said, after the sale, and without the knowledge of the purchaser, as to the disposition of his property, and mortgages subsequently made by him, not shown to be connected with such sale or parts of a general scheme to defraud, are inadmissible, as against the purchaser.

On the issue whether a sale was in fraud of the creditors of a person, who within four months thereafter was adjudged a bankrupt, the purchaser may be asked by his counsel if he knew at the time of the sale that the seller had a fraudulent purpose to make a preference, or was contemplating bankruptcy.

TORT, by the assignee in bankruptcy of Cyrus Leonard, for the conversion of a cow and a yoke of oxen. Writ dated November 27, 1876. Trial in the Superior Court, before *Brigham,* C. J., who allowed a bill of exceptions in substance as follows :

On November 16, 1875, Leonard sold the cattle in question to the defendant, and delivered them to him the next morning. It was admitted that Leonard was insolvent at the time of the sale, and was, on March 3, 1876, adjudged a bankrupt, on his own petition. The plaintiff contended that the sale was in fraud of the bankrupt act.

Leonard, who was called as a witness by the plaintiff, was asked what conversation he had with the plaintiff, after the delivery of the cattle on November 17, 1875, with reference to his property, or the disposition he had made of it. The defendant objected, and the judge excluded the evidence.

The plaintiff then offered in evidence certain mortgages of personal property executed by Leonard to third persons on November 18, 1875. It appeared that all the property Leonard had on November 15, 1875, not exempt from attachment, was the property conveyed to the defendant and the property described in these mortgages, and that the value of the whole property was about $800. It also appeared that, at the time of the sale to the defendant, Leonard was indebted to different persons, to an amount above $2000. The mortgages offered in evidence were excluded.

The plaintiff called Lyman Wilbur, who testified, among other things, as follows : " I had a talk with the defendant, within a day or two after November 18, 1875. The defendant asked me if I had heard anything from Lincoln, referring to the plaintiff , I said ' No.' He then asked if Leonard owed my son. I told him that he did ; he asked how much ; I told him about $280. Wilbur then said, ' Leonard is too smart for Lincoln ; will Lincoln sue Leonard ? If Lincoln sues Leonard, he will go into chancery.' He asked me what Leonard had given my son for security. I told him, as far as I could remember. At another time he said Lincoln would not get much, but the other creditors would get their pay. At another time, after the bankruptcy, he came to my house and asked my son to sign to give Leonard his discharge in bankruptcy; he spoke about Leonard's going into bankruptcy. I told him I did not think it was right that some should get all their pay and others nothing. I asked him how he could make it out that he could put in a claim for $100, when he had received $120. He said he could put in other things to make it $100." There was no evidence, by either party, as to whether the defendant had met Leonard between the time when the defendant had received the cattle of Leonard and the date of the first talk with Lyman Wilbur. The plaintiff offered evidence tending to show that Cyrus Leonard's financial reputation for a year previous to the sale to the defendant was bad, and it appeared that for some years previous he was slow pay, and that his financial reputation had continued about the same. The plaintiff again offered the mortgages in evidence ; but the judge excluded them.

The defendant was asked by his counsel, " Did you know at the time of the sale that Leonard had a fraudulent purpose to make a preference under the bankrupt laws, or that he was contemplating bankruptcy ? " The judge ruled, against the plaintiff's objection, that the question was competent, and the defendant answered that he did not. The defendant also testified that he lent Leonard $165 for thirty days on October 16, 1875, and that on November 16, 1875, he called on Leonard for payment ; that Leonard said he had no money on hand, but had some cattle which he was intending to sell to raise the money, and would like to sell them to him, and thereupon the sale in question was made.

The plaintiff again offered the mortgages in evidence; but the judge refused to admit them.

The plaintiff asked the judge to rule as follows : " 1. It is immaterial what was the defendant's belief as to the intention of Leonard in making the sale. 2. If the defendant had reasonable cause to believe that Leonard made the sale in contemplation of insolvency, that is, with a view or under expectation of petitioning for the benefit of the bankrupt act, then such sale was void and the plaintiff can recover. 3. A transfer within four months of filing the petition by the bankrupt, with a view to prevent the property from being equally distributed among all the creditors, is a transfer in fraud of the bankrupt laws of the United States; and if the defendant had reasonable cause to believe that Leonard was at the time of the transfer insolvent, then he is presumed to know that it was a transfer in fraud of the bankrupt laws of the United States."

The judge refused so to rule ; but instructed the jury that the plaintiff, to maintain the action, must prove that, on the day the cattle were delivered by Leonard to the defendant, Leonard was then insolvent in fact, or contemplated becoming so; that the sale and delivery were with a view to give a preference to the defendant as his creditor ; that the defendant then had reasonable cause of belief that Leonard was insolvent; and that the defendant knew that such sale was made by Leonard in fraud of the bankrupt law, *i. e.* so as to evade or defeat the operation of the bankrupt law.

The judge, at the request of the plaintiff, also instructed the jury as follows : " The fraudulent intent, with a view to give a preference, extends to a sale made with an intent to give one creditor any advantage over others in respect of payment or security of his debt. Evidence of the debtor's financial condition and reputation a year before his going into bankruptcy is competent to show what means the defendant had to know or cause to believe that he was insolvent during the year following. It is immaterial whether the defendant in fact did believe that Leonard was insolvent or not. If the sale to the defendant was out of the usual and ordinary course of business, it is *primâ facie* evidence of the fraudulent intent of the parties."

The jury returned a verdict for the defendant ; and the plaintiff alleged exceptions.

*C. A. Reed*, for the plaintiff.

*W. H. Fox*, for the defendant.

AMES, J.   In order to impeach and set aside a conveyance of property by an insolvent person, as a fraudulent preference of a creditor in violation of the provisions of the United States bankrupt law, it is necessary, as the law now stands, for the assignee of the bankrupt to prove, among other things, that the debtor was insolvent or in contemplation of insolvency, and that the grantee or person to be benefited by the conveyance had reasonable cause to believe the debtor to be insolvent, and knew that the conveyance was made in fraud of the bankrupt act.   U. S. St. June 22, 1874, § 12.   Until June 22, 1874, it was sufficient to prove, against the grantee or preferred creditor, that he had " reasonable cause to believe " that the conveyance was made in fraud of the statute.   U. S. Rev. Sts. § 5128.   It is impossible to believe that the change introduced in the more recent statute was intended as a mere verbal alteration.   It is well said by Dillon, J., in *Singer* v. *Sloan*, 3 Dillon, 110, that if these two forms of expression are in contemplation of law identical, then the change of the statute meant nothing and accomplished nothing ; and that " where reasonable cause to believe that a fraud on the act was intended was before sufficient, knowledge of that fact is now required."   We have had occasion to decide, in *Carroll* v. *Hayward*, 124 Mass. 120, that reasonable cause to know, although it is evidence tending to prove knowledge, is not identical with actual knowledge.   " Reasonable cause to believe " is certainly entitled to no greater weight.   The court could not have ruled as the plaintiff requested, without giving the jury to understand that something short of actual knowledge would be sufficient to make out this element in the plaintiff's case.   *Tryon* v. *Whitmarsh*, 1 Met. 1.   *Pearson* v. *Howe*, 1 Allen, 207.

The bankrupt was called by the plaintiff as a witness, and of course it was competent for the plaintiff to examine him fully as to the disposition of his property, and as to his purpose and design in the arrangements which he had made and carried out. But with regard to his testimony as to a conversation with the plaintiff on that subject, the day after the conveyance, the defendant not being present or having any knowledge of it, we see no ground on which it could have been admitted.

As to the mortgages which he subsequently made to other parties not shown to be connected with the defendant, we find nothing in the facts stated in the bill of exceptions which shows that the presiding judge was bound to rule, as a matter of law, that they and the conveyance to the defendant were parts of one general scheme, or that they had such a connection with each other as to bring them within the rule laid down in *Jordan* v. *Osgood*, 109 Mass. 457, and *Lynde* v. *McGregor*, 13 Allen, 172, 180. We cannot say therefore that there was any error in holding that the general rule should be applied, namely, that the title of a purchaser is not to be impeached by any subsequent act or declaration of the vendor. *Bridge* v. *Eggleston*, 14 Mass. 245, 250. *Taylor* v. *Robinson*, 2 Allen, 562. *Horrigan* v. *Wright*, 4 Allen, 514. *Holbrook* v. *Holbrook*, 113 Mass. 74.

As the question of the defendant's knowledge of Leonard's purpose in making the conveyance was directly raised by the case, it was of course proper to ask the defendant whether he knew that Leonard intended a fraud upon the bankrupt law when he made the conveyance.

The result is, that we find no error in the rulings and instructions at the trial, and therefore the

*Exceptions are overruled.*