## CASSANDRA DRENNAN *et al.*

*v.*

## JAMES DOUGLAS *et al.*

*Filed at Springfield March 28, 1882.*

1. CONSIDERATION—*founded in violation of law, and immorality.* The violation of the marriage obligations by a married woman by committing adultery, and becoming pregnant by one not her husband, under an alleged promise of marriage, can not be made the foundation for a consideration to support a promise by her seducer to make a will giving her and the child all his property, and a court of equity will not specifically enforce such an agreement, even if such an agreement, founded on a proper consideration, is enforcible.

2. MARRIAGE CONTRACT—*void, when one of the parties is married.* A person having a husband or wife living, and undivorced, is incapable of entering into a valid marriage contract, and no right of action can arise for its breach.

3. BASTARDY—*right of married woman to maintain.* Where a married woman becomes pregnant, during coverture, of a child, which is born less than eight months from the time she obtains a divorce, it is doubtful whether she can maintain a bastardy proceeding against one as the putative father of the child, the presumption being that her husband is its father, especially in the absence of proof of no cohabitation by him within the proper period to beget the child.

APPEAL from the Appellate Court for the Third District;— heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. CHARLES S. ZANE, Judge, presiding.

Mr. N. M. BROADWELL, for the appellants:

The forbearance to prosecute a claim, and its compromise, constitute a sufficient consideration to support an agreement, and it is immaterial on whose side the right turns out to be. *Husband* v. *Epling,* 81 Ill. 172; *McKinley* v. *Watkins,* 13 id. 140; *Cassell* v. *Ross,* 33 id. 244; *Miller* v. *Hawker,* 66 id. 185; *Honeyman* v. *Jarvis,* 79 id. 318.

That courts of equity will enforce agreements to make a particular disposition of one's property by will, when there are no intervening equities, by seizing the assets and treating the holder as trustee for the benefit of the party entitled, see *Johnson* v. *Hubbell,* 2 Stockt. Ch. 332; *Wright* v. *Tinsley,* 30 Mo. 389; 3 Parsons on Contracts, 406; *Gupton* v. *Gupton,* 47 Mo. 37; *Bell* v. *Hewitt's Exr.* 24 Ind. 280; *Duff* v. *Fisher,* 15 Cal. 375.

Messrs. STUART, EDWARDS & BROWN, for the appellees, contended that there was no sufficient consideration for the alleged agreement, and that the facts showed an evident intent to frighten a timid and sick man out of his property on behalf of an adulteress, for criminal intercourse, commenced and continued before the birth of the child, while she was married, and that the agreement, even if based on a sufficient consideration, was too vague and indefinite to be enforced.

Messrs. GROSS & CONKLING, also for the appellees:

According to the allegations of the bill, Reed had sexual intercourse with Cassandra, the mother of the child, Adaline, while she was the wife of Davis W. Lawley, six weeks prior to her divorce from him. The allegation that Reed gained access to the person of Cassandra under a promise of marriage, is without force, for the reason that if made at all it was made to a married woman, who is incapable of making a contract of marriage. *Hebblethwaite* v. *Hepworth,* 98 Ill. 126.

It is also alleged, that in consideration of Cassandra's forbearance to enforce her legal remedies against Reed, he made the agreement, etc. For an act of adultery committed with her with her consent, while she was a married woman, she could maintain no action.

Had Cassandra her action against Reed for bastardy? We think not, for the reason that the statute gives this remedy

only to an unmarried female, and because the law, in the absence of proof of non-access by the husband, presumes the child to be his, and legitimate.   *Van Arnum* v. *Van Arnum,* 1 Barb. Ch. 375.

Sexual intercourse is presumed where personal access is not disproved, unless the contrary is shown by satisfactory evidence; and where it is either presumed or proven, the husband must be taken to be the father of the child, unless ·there was a physical or natural impossibility that such intercourse could have produced such child.   *Cross* v. *Cross,* 1 Paige, 139; *King* v. *Luffe,* 8 East, 193; *Head* v. *Head,* 1 Sim. & Stu. 150; Turner & Russ. 138, same case on appeal; Rev. Stat. 1874, sec. 3, p. 420.

A court of equity will not specifically enforce a contract, unless it be reasonable, reciprocal, fair and just, and founded on a valuable consideration.   *Lear* v. *Choteau,* 23 Ill. 39; *Stone* v. *Pratt,* 25 id. 25.

And the contract must be clearly and satisfactorily proven. *Allen* v. *Webb,* 64 Ill. 342; *Bailey* v. *Edmunds,* id. 125.

And it must be proved as alleged.   *Tiernan* v. *Granger,* 65 Ill. 351; *Cronk* v. *Trumble,* 66 id. 428.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by Cassandra Drennan and Adaline Reed, in the circuit court of Sangamon county, against the administrator and heirs at law of the estate of John A. Reed, deceased, and to enforce the specific performance of an alleged contract to make a will.   It is alleged in the bill that in the year 1865, Reed, under promise of marriage, seduced Cassandra Drennan, whereby she became pregnant, and in March, 1866, she was delivered of a child, Adaline Reed; that Reed was an unmarried man; that about four months after the birth of the child, Reed visited complainants, and admitted that he was the father of Adaline; that Cassandra Drennan made known to Reed her purpose to prosecute him, and take

all such legal remedies as were authorized by the laws of the State for the wrong committed; that Reed, to induce her to desist and forbear legal proceedings, proposed to make a will by which he would give complainants all his property, and it was then and there agreed between Cassandra and Reed that she would forbear legal remedies, and in consideration thereof Reed agreed to make a will, and thereby give complainants all property of which he might be the owner at his death; that, relying upon said agreement, no proceedings were insti- tuted against Reed. It is alleged that Reed died, without performing said agreement, on the 4th day of September, 1876, leaving an estate consisting of personal property of the value of $5000, which is in the hands of James Douglas, administrator of the estate of Reed, duly appointed by the county court of Sangamon county.

Under the facts of this case we do not deem it necessary to enter upon a consideration of the authorities, and determine the question whether a court of equity would or would not, under all circumstances, refuse relief where a bill is filed to enforce the specific performance of a contract to make a will. This case must be determined by the facts, as established by the evidence, and the first inquiry is, whether the alleged contract was made upon such a consideration as will give complainant a standing in a court of equity.

It is said that Reed was liable to be prosecuted for a breach of marriage contract, seduction and bastardy, by Cassandra Drennan, and the agreement on her part to forbear prosecution formed a sufficient consideration for the agreement to make the will. An examination of the evidence will show that complainant could maintain no action against Reed for seduction, for the obvious reason that when she was seduced and the child begotten, if seduced at all, she was a married woman, the wife of one Lawley, and if a right of action existed in behalf of any person, it was the husband. As to the marriage contract, as she was then a married woman,

she could not enter into a marriage contract, and any marriage contract by her then made would be void. So far as the bastardy was concerned, it is very doubtful whether, under the facts as they existed, an action could be maintained. Cassandra was not divorced from her husband until July 11, 1865, while the child was born March 7, 1866,—less than eight months from the time when the divorce was granted. From these facts it is apparent that at the time complainant became pregnant,—allowing the usual period for gestation,— she was a married woman, and the presumption is that her husband was the father of the child. It is true that she commenced an action for divorce in January, 1865, but it is not proven that her husband did not cohabit with her in June, when she became pregnant.

The substance of the transaction, when properly analyzed, is this: Reed had connection with a married woman, under promise of marriage. She became pregnant, whether by him or her husband is uncertain. She subsequently threatened prosecution, and he promised to make a will, under which his property, at his death, should go to her and her child. Can a court of equity sanction and enforce a contract founded on such a consideration? We think not. At the time the alleged agreement was made Reed was under no legal obligation whatever to complainant. It may be true that he had committed adultery with her, but if he had, that fact can not be regarded as a sufficient consideration to support a promise to make a will. It is a familiar rule of equity that a party seeking the aid of a court of conscience must come into court with clean hands. Here complainant violated her marriage obligation. When she became pregnant by Reed she violated the laws of the State, and was guilty of adultery, and then in turn undertakes to make these violations of duty and law the foundation for a consideration to support a promise, which she calls upon a court of equity to enforce. A court would stultify itself should it grant relief under such circumstances.

A will, to be valid and effectual to pass property, under our statute, is required to be reduced to writing, signed by the testator, and attested in the presence of two credible witnesses. If the relief prayed for in this case should be granted, and the alleged agreement to make a will enforced, the salutary provision of the statute would in effect be set aside, and estates of deceased persons would in many cases be at the mercy of some reckless pretender, who would ever be ready to work up some plausible state of facts to prevent property from descending in the mode pointed out by the statute.

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*