SARAH A. SHORES *vs.* HARRIET M. HOOPER.

Bristol.   October 31, 1890. — February 24, 1891.

Present: FIELD, C. J., W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Estoppel — Probate Court — Conclusiveness of Decree — Judgment in Rem — Res inter alios.*

A probate decree, based upon the findings of a jury that a person was the daughter and sole heir of a testator who gave his estate to his heirs at law, reopening the account of the administrator with the will annexed and charging him with sums paid to supposed heirs of the testator, and authorizing her to sue the administrator's bond for his failure to account to her, is not conclusive in favor of her title to land of the estate granted by such supposed heirs to one who was

not a party to the probate proceedings; and in a writ of entry brought by her against such grantee to recover the granted premises, such findings are not admissible in evidence against the tenant for any purpose.

WRIT OF ENTRY to recover a parcel of land in Nantucket. Plea, *nul disseisin.* Trial in this court, before *C. Allen,* J., who, before verdict, reported the case for the consideration of the full court. The facts appear in the opinion.

*C. W. Clifford,* for the demandant.

*H. M. Knowlton,* for the tenant.

BY THE COURT. The following opinion was written by Mr. Justice DEVENS, and after his death was adopted as the opinion of the court by the Justices who sat with him at the argument.

The case involves the title to a tract of land. The demandant claims it, as the daughter and sole heir at law of Dr. Franklin Ellis. The tenant in possession claims under a conveyance made to her by three nieces of Dr. Ellis. Subsequently to this conveyance, the demandant, whose existence had been previously unknown, and who had been ignorant of the death of her alleged father, obtained a decree in the Supreme Court of Probate, ordering the account of the administrator with the will annexed of Dr. Ellis's estate to be reopened, and that he should be charged therein with the money he had paid to the supposed heirs of the testator, his three nieces, and further authorizing the demandant to bring an action on the bond of the administrator for failing to account to her as the next of kin and heir at law. The payments to the nieces referred to had not, so far as appears, been made upon any order of distribution made by the Probate Court. By his will, Dr. Ellis, after a single pecuniary legacy, devised and bequeathed all the residue of his personal estate, and all his real estate, " to my legal heirs according to the laws of descent in Massachusetts." This decree was made after a jury, upon issues submitted to them, had found that the demandant was the person described in the residuary clause of Dr. Ellis's will, and was his sole heir at law. The demandant relies upon this decree, and offers it as conclusive evidence of her title to the premises demanded, it being conceded that they are a part of the real estate of Dr. Ellis affected by the residuary clause of his will. This decree did not in any manner deal with the real estate, with which the administrator had no connection, and

which, by the will, had been devised to the heirs at law of Dr. Ellis, and had been sold by the three nieces under the supposition that they were the sole heirs at law. It dealt only with the administrator in his management of the personal property; yet it is the contention of the demandant that the decree is not only unimpeachable as to what it assumes to order and direct, but also affords conclusive evidence as to all the findings of fact on which it was based. While the controversy upon which the decree was rendered was between the administrator and the demandant, the three nieces, from whom the tenant in the present suit claims title, were cited, and appeared therein.

Ordinarily, nothing which a grantor does or suffers to be done can affect rights previously vested in his grantee, and the general principle is well settled that subsequent transactions between such grantor and others, whether in or out of court, are not to affect previously granted rights. *Dooley* v. *Potter*, 140 Mass. 49. The tenant in the present suit did not appear in the proceeding which resulted in this decree; she had no notice thereof, nor any right to appear therein. As the grantee of real estate, she had no right to have any part in the settlement of the administrator's account. She may, therefore, if the demandant's contention is sustained, lose her property, or what she has supposed to be hers, not by the force of any adjudication in relation thereto, but because the facts on which an adjudication was based in regard to a matter in which she had no interest, and with which she had no connection, must have been there so found that, if applied to her estate, they will conclude her in the title thereto. It is true, that, in order to prevail in her controversy with the administrator, the demandant was compelled to prove that she was the sole heir of Dr. Ellis; but the parties to the present controversy are not the same as those in that litigation, nor is the same property the subject of dispute.

It is urged by the demandant that this was in the nature of a decree *in rem*, and established her pedigree as the child of Dr. Ellis, and her status in reference to his estate as against all the world, so that the rights to all property, real or personal, and of all persons, are definitively settled, so far as those rights were dependent upon the question whether the plaintiff is the daughter of Dr. Ellis  It is certainly not a proposition which commends

itself to our natural sense of justice, or to the analogies of the law, that one should be concluded as to his property by a decree to which he was not and could not have been made a party, and of which he had no notice. *Kelly* v. *Dutch Church,* 2 Hill, (N. Y.) 105. *McCoy* v. *McCoy,* 29 W. Va. 794. *Axford* v. *Graham,* 57 Mich. 422.

There is no proceeding known to us by which, under our law, one may establish his legitimacy or his descent by a proceeding which may terminate by a decree in the nature of a decree *in rem,* and by which all would be concluded. The St. 21 & 22 Vict. c. 93, is an act to enable persons in England to establish legitimacy, the validity of marriages, and the right to be deemed natural born subjects. An application may be made by petition to the Court for Divorce and Matrimonial Causes for a declaration of legitimacy, or validity or invalidity of marriage; the Attorney General is notified, and such persons in addition are cited as the court shall think proper. But it is carefully provided that the decree shall in no way be allowed to prejudice any person not cited nor made a party, unless the heir at law, next of kin, or one deriving title from one so cited and made a party.

While, as involved in the matter in the Probate Court, it was necessary to the determination of the rights of the demandant and the administrator to decide whether the demandant was the daughter of Dr. Ellis, and while the decree must have its full effect, so far as the matter immediately passed upon was concerned, such a decree has none of the proper characteristics of a decree *in rem,* which deals with the *res* itself, and in regard to which, ordinarily, but two questions arise, whether the *res* was actually in the control of the court, and whether the court dealt with it according to its lawful authority. But, as remarked by Mr. Justice Holmes in *Brigham* v. *Fayerweather,* 140 Mass. 411, even in proceedings *in rem* there is no reason why strangers in interest, not entitled to be heard, " should be bound by the findings of fact, although bound to admit the title or status which the judgment establishes." In the case cited there had been a decree which created a change of status or title of an estate by establishing a will in the Probate Court. The plaintiff had been a party to the proceeding in which the decree establishing the will was rendered, and the decree necessarily proceeded on the

ground that the testator possessed sufficient capacity to make the will; yet it was held that the decree of the Probate Court was not admissible as evidence of the testator's capacity on a bill brought by the plaintiff as a devisee under the will, and also as executor, to set aside for want of mental capacity a deed made by the testator, although this was accompanied by evidence that the testator's mental capacity was the same at the time of the execution of both instruments.

The cases are very numerous in which it has been held that the decrees of probate courts establishing and affirming wills, appointing administrators or trustees, directing the distribution of estates, and as a part thereof determining who are entitled to distributive shares, and thus deciding questions of descent or pedigree, are conclusive. When rendered upon proper notice, they have been held conclusive upon those affected thereby who are made parties by personal or public notice, who are entitled to appear and be heard, and to have such rights as are accorded to parties litigant. In *Waters* v. *Stickney*, 12 Allen, 1, it is said by Mr. Justice Gray, "Decrees of probate courts in matters of probate, within the authority conferred upon them by law, are conclusive upon the courts of common law, and cannot be reversed by writ of error or certiorari." These decrees are analogous to decrees *in rem.* The subject matter, that is to say, the property, is within the jurisdiction of the court, directly or through the officers it appoints, and where the decree of distribution extends to the entire estate it "is necessarily conclusive, because nothing further is left to be distributed." *Pierce* v. *Prescott*, 128 Mass. 140. In complying with the decree of distribution, the administrator would be protected, as it would be an adjudication which determined the amount to be paid by him and the person to whom it should be paid. *Loring* v. *Steineman*, 1 Met. 204, 208. *White* v. *Weatherbee*, 126 Mass. 450. *Bassett* v. *Crafts*, 129 Mass. 513.

But while full effect is given to these decrees in regard to the subject matter with which they deal, it has never that we are aware of been held, even as against those persons who had notice of the proceeding, and were entitled to be heard thereon, that in other proceedings the facts involved were to be deemed as conclusively settled thereby. While the decree itself cannot

be impeached, the findings of fact may be controverted in other tribunals, where they are incidentally and collaterally brought in question.    Had the demandant failed in her controversy with the administrator, she could not have been estopped thereby from maintaining this action to recover the real estate of the testator.    Nor are we prepared to say that the Probate Court itself would be so bound by the facts as found in its former decree, that it would be compelled to follow such finding subsequently if new facts should be developed at a later stage of the case.    By the Pub. Sts. c. 136, § 21, when it is deemed for the interest of the estate, the Probate Court may order a partial distribution of the assets.    While this decree unappealed from cannot be impeached, and will protect those who have acted upon it, yet where the court is obliged to render a subsequent decree disposing of the remainder, it is again necessary, as matter of fact, to determine who are entitled to the distributive shares.    If convinced that the original distribution was made on erroneous findings as to those entitled, we cannot hold that the court would be bound to follow it, and thus perhaps exclude one prepared to prove himself entitled to a distributive share. Even if the status of the property so far as it had been distributed was fixed and determined, the proceeding so far as the distribution is concerned should have effect only to this extent.

There are certain cases, it must be conceded, where it has been held that some judgments *in rem* are conclusive evidence of the facts adjudicated in favor of a stranger as against a party. These are judgments of admiralty courts condemning a prize, and some other judgments of a similar nature.    But these cases rest upon special reasons of convenience or construction, and cannot be said to lay down any general principle.    *Brigham* v. *Fayerweather*, 140 Mass. 411, 414.    How far they are to be followed we need not now discuss.    But in those cases which are strictly *in rem* the attempt is made at least, by public notice, to make all interested in the *res* parties thereto, and the effect given to the findings of fact is due to the circumstance that they were thus made parties.    *Salem* v. *Eastern Railroad*, 98 Mass. 431.    As remarked in *Commonwealth* v. *Cambridge*, 4 Mass. 627, " It is an essential principle of natural justice that every man have an opportunity to be heard in a court of law upon every question

involving his rights or interests, before he is affected by any judicial decision of the question."

The plaintiff relies much on the case of *Ennis* v. *Smith*, 14 How. 400. In that case, the decrees of the Courts of Nobility of the governments of Grodno and Kobryn in Lithuania, in the kingdom of Poland, were admitted as evidence of the identity of the plaintiffs as heirs of General Kosciusko. The exact extent of the jurisdiction of these courts sitting under these governments does not clearly appear from the reported case, but it would seem that they had authority, in proceedings instituted directly for the purpose, to establish the pedigree and relationship of certain persons of the class to which Kosciusko belonged. Proceedings of this nature had been therein initiated and conducted, and the decree had been made by which the plaintiffs were declared to be the next of kin of Kosciusko. This was a part of the plaintiffs' *prima facie* case; there was no controversy between the plaintiffs as to their relationship, and on the other side no claim was made as the heirs of Kosciusko. The case of the defendants rested upon an entirely distinct ground. While the counsel for the defendants stated the proposition that the plaintiffs had not shown themselves to be the next of kin of Kosciusko, he did not argue it, and in the opinion of the court, which on this question was brief, the only point decided was in favor of the admissibility of the decree as that of a foreign court. It is, however, there said, that it was " a foreign judgment *in rem*, and is evidence of the facts adjudicated against all the world." It is not to be doubted that there may be a proceeding authorized by law in which a pedigree may be authoritatively declared which will bind all those who are parties to it, perhaps all those who have any title to be heard. But even if we were to go much further than this, and, which is much more doubtful, hold that all persons might be bound thereby, it would still fail to establish the demandant's proposition, that when a question of pedigree is decided as one of the findings of fact necessary to be determined as a reason for a judgment, or a reason on which it may rest, it is conclusive evidence of the fact thus found against strangers, and those who are neither parties nor privies thereto. Such a case is quite distinguishable from one where a pedigree is established by a decree in a proceeding

where the declaration of pedigree is the judgment itself. The proposition for which the demandant here contends was not raised at all in *Ennis* v. *Smith*, and we cannot, therefore, recognize that case as authority for it.

The demandant also attaches much importance to the case of *Pittapur* v. *Garu*, L. R. 12 Ind. App. 16. Without undertaking to restate this complicated case, the point there decided is, that where in a former suit, relating to different property, an issue of fact as to the adoption of a son had been heard and decided against the plaintiff's ancestor, under whom he alone could make title, and in favor of the ancestors of the defendants, the plaintiff was bound by the adjudication against his father, and estopped thereby, even though the suit related to a different piece of land. This is certainly quite different from holding a party estopped on a question of pedigree by the decision of a case in which neither he, nor his ancestors, nor his grantor were parties, or entitled to be so. In the case cited, all concerned were privy to the former judgment.

The only relation which the former proceeding in the Probate Court had to the present suit is, that the demandant, in order to succeed there, was obliged, as against other parties, to prove, as she is here, that she is the daughter of Dr. Ellis. If that had been, as this is, a writ of entry against another party for a piece of land, it certainly cannot be maintained that a recovery of a judgment there by a decision in her favor would enable her, so far as this proof is concerned, to recover a judgment against the tenant for a different piece of land, even if the title to both pieces had descended to her from the same ancestor. In the proceeding in the Probate Court, as a preliminary fact to be decided before the administrator could be held liable, it was found that the demandant was the daughter of Dr. Ellis. Even if the subsequent determination of the responsibility of the administrator and settlement of his accounts would be conclusive under our statutes, proper notice having been given, and to that extent would possess many of the characteristics of a judgment *in rem*, the finding which preceded should have no effect in other proceedings against another party, a stranger, not affected by any notice thereof, nor entitled to be then heard therein if he had actually appeared.

We are therefore of opinion that the proceedings in the Probate Court, and the record of the judgment there made, were not conclusive evidence of the facts stated therein. If not conclusive, we do not perceive that the findings there made are admissible against the tenant for any purpose. They must be held to be *res inter alios.*               *Case to stand for trial.*