JOHN B. O'DONNELL *vs.* EMMA E. HALL.

Hampshire.    September 15, 1891. — September 26, 1891.

Present: ALLEN, HOLMES, KNOWLTON, & BARKER, JJ.

*Fraudulent Conveyance — Acts and Declarations of Grantor — Agency.*

Acts and declarations of a grantor in a deed, after delivery thereof, while putting the same on record at the grantee's request and clothed with no further authority, are not admissible to impeach the title which it purports to convey.

On a writ of entry to recover land, alleged to have been conveyed in fraud of a creditor by two owners in common to the tenant, the wife of one of them, through her father, there was evidence that the father bought and gave it to his daughter as a home, for which purpose she and her husband then occupied it, the other grantor having also lived with them some of the time; that on the first business day after receiving a letter from the creditor's attorney demanding payment, the grantors, the tenant, and her father met at her home and talked about making the conveyance; that on the same day they went to an attorney's office, where the deeds were executed; that the actual occupation of the premises remained unchanged; and that the tenant had no personal property, and knew all that was done in respect to the conveyance to her father. *Held*, that whether the transaction was fraudulent was for the jury.

WRIT OF ENTRY to recover possession of a farm in Southampton.

At the trial in the Superior Court, before *Barker*, J., the contention on the part of the demandant was that the farm was conveyed to the tenant in fraud of Gilbert M. Hall, who was a creditor of his sons, George W. Hall and her husband, Leander C. Hall. There was evidence that George and Leander became the owners of the farm in 1884, as tenants in common; that Leander and his wife occupied the farm as a home, George living with them some of the time; that on February 17, 1888,

Gilbert made a demand through an attorney upon his sons for payment of his claim, by a letter which was received by them on Saturday, the 18th; that on Monday following one Stannard, the tenant's father, together with George, Leander, and the tenant, were at the farm, and talked about conveying the same; that on the same day they went from Southampton to Springfield, to an attorney's office, and there deeds were drawn up from George and Leander to Stannard, and from the last named to the tenant; that the deed from Stannard was then executed and handed to Leander, who was directed by Stannard to carry it to Northampton to the registry of deeds for record; that the deed from Stannard to the tenant was carried home by him for his wife to sign, and subsequently was delivered to the tenant and duly recorded; and that Leander on the next day went to the registry of deeds and handed the deed to a clerk, but requested the clerk not to record it at the time, and went away, but soon returned and directed it to be recorded. The demandant then offered to show that when Leander entered the registry of deeds he was flushed in the face, appeared very much excited, acted as if nervous and in a hurry, and asked where the record of attachments was kept; that the clerk directed him to the office of the clerk of the courts, and he hurriedly went out of the room towards that office; and that he soon returned smiling, and said, "It's all right, you may record it." The judge, upon the tenant's objection, excluded the evidence thus offered; and the demandant excepted.

The judge also excluded, upon the tenant's objection, the following letter, written and signed by Leander, to the attorney of Gilbert: "Southampton, February 22, 1888. J. B. O'Donnell. Dear Sir, — Yours of the 17th at hand. I was not aware that there was any claim against us in that line. We will call and see you as soon as my brother is well enough to ride up there. Yours respectfully. L. C. Hall."

There was also evidence that Gilbert brought an action upon his claim against George and Leander on April 6, 1888, and made a special attachment of the premises in question; and that subsequently, upon his recovery of judgment against them for the sum of $922.04, the farm was duly sold on execution and conveyed to the demandant. There was also evidence, that at

the time of the conveyance to the tenant she had no personal property, and that she had none at the time of the trial; and that money was paid by Stannard for the farm to George and Leander at the time of the conveyance.

The judge ruled that there was no evidence to sustain the claim of the demandant, and directed the jury to return a verdict for the tenant; and the demandant alleged exceptions.

*J. B. O'Donnell, pro se.*

*H. W. Ely & C. F. Ely,* for the tenant.

ALLEN, J.   The demandant's exceptions to the exclusion of evidence must be overruled.   The general rule is, that the acts and declarations of a grantor in a deed, after its delivery, are not admissible to impeach the title which it purports to convey. *Holbrook* v. *Holbrook,* 113 Mass. 74.   *Lincoln* v. *Wilbur,* 125 Mass. 249.   *Shores* v. *Hooper,* 153 Mass. 228.   In the present case there was nothing to show that either Stannard or the tenant knew of the inquiries and statements made by Leander at the registry of deeds, or of his appearance and manner while there. The ground upon which the admissibility of evidence to show such inquiries, statements, appearance, and manner is urged is, that Leander was acting as agent of Stannard in leaving the deed for record.   It did not appear, however, that he had any discretionary authority.   Stannard directed him to carry it for record to the registry of deeds.   There is nothing to show that there was any error in law in applying the general rule, and excluding the evidence offered by the demandant.   It did not appear that Leander was agent of the grantee in any such sense as to authorize him to make admissions prejudicial to the title. For the same reason, the letter of Leander might also properly be excluded.

Upon the general question whether the conveyance by the two Halls to Stannard was made with a design to defraud the grantors' creditor, we are of opinion that the evidence should have been submitted to the jury.   There was, to be sure, direct evidence tending to support the validity of the deed, and to show that Stannard bought the property merely for the purpose of making a gift of it to his daughter, and thus of enabling her to continue in her home.   The circumstances, however, would furnish an argument to the jury that there was a purpose on the

part of the grantors, in which the grantee participated, of defrauding the father of the grantors. The two grantors owned the premises as tenants in common, and Leander and his wife occupied them as a home, George living with them some of the time. The grantors were indebted to their father in a claim upon which he afterwards recovered judgment for $922.04. An attorney's letter demanding settlement of this claim was sent to them. On the first business day after its receipt, the grantors and Stannard, and also the tenant, who was Stannard's daughter and Leander's wife, were at the tenant's house, and talked about making the conveyance; and on the same day they went from Southampton to Springfield, to an attorney's office, where the deed to Stannard was drawn up and executed, and also a deed from him to his daughter. The actual occupation of the premises remained unchanged. The evidence tended to show that the tenant had no personal property, and also that she knew all that was done in respect to the conveyance to her father. We think the demandant had a right to have the effect of these and other circumstances passed upon by the jury, who would also weigh the explanations offered by the tenant. *Marden* v. *Babcock*, 2 Met. 99, 105. *Plimpton* v. *Goodell*, 143 Mass. 365.

*Exceptions sustained.*