### JOHN B. O'DONNELL *vs.* EMMA E. HALL.

Hampshire.    September 20, 1892. — December 6, 1892.

Present: FIELD, C. J., KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Fraudulent Conveyance — Husband and Wife — Evidence.*

At the trial of a writ of entry the following facts appeared.  A. and B., who were brothers, had title to the demanded premises as tenants in common, and B. and his wife occupied them.  On February 17, 1888, the attorney of C. sent a letter to A. and B. demanding a settlement of a claim which C. had against them. This letter was handed to B.'s wife on February 18, at about five o'clock in the afternoon, and its contents were made known to A. and B.  On the same evening, B. left the house and walked sixteen miles to the house of D., his wife's father.  On the next day, which was Sunday, B. returned home with D. in the latter's team.  On the following day, February 20, A., B., B.'s wife, and D. were together at the house, and talked about the purchase by D. of the premises. At about seven o'clock in the morning of that day, A., B., and D. went eighteen miles to a certain city, and made a conveyance of the premises from A. and B. to D., and another from D. to B.'s wife, and returned at eight o'clock that night. B. went to the city where the registry was by the first train the next morning, and had the deed to D. recorded.  The deed from D. to B.'s wife, although bearing the same date as the other, was not recorded until March 10, for the

reason that D. took it home with him to get it signed by his wife. C. brought an action on his claim against A. and B., on April 6, 1888, and attached the premises as fraudulently conveyed to B.'s wife. There was a mortgage on a small portion of the premises when A. and B. took their title, which had not been paid. The parties testified that the deeds made on February 20, 1888, were for a valuable and adequate consideration. The consideration mentioned in each of the deeds was $1,300, and there was evidence that the premises were then worth from $2,100 to $2,500. D. testified that he had in his house $500 of the $1,300 which he paid; that it had been accumulating one and a half or two years; and that he got the balance of the $1,300 from his sister, who was somewhere in another State, but whose address or residence he did not know. He also testified that he owned a farm in the town where he lived, and a part of two other farms. A mortgage was put in evidence from D., dated March 16, 1886, duly recorded and undischarged, in which he promised to pay the mortgagee $800, of which $100 was to be paid on May 1, 1886, $100 on July 1, 1887, and $200 on each July 1st following until the whole was paid, with interest annually. D. testified that he had no money with which to pay this sum when the mortgage was given, but made the payments on or before the times when each became due. At the time of and before the delivery of the deed to B.'s wife, she had no money or other property except an organ. B. and his wife continued to occupy the premises after the conveyances. An auditor's report was made in favor of C. in his action against A. and B., judgment therein was recovered by him, and upon the execution issued thereon the premises were sold to the demandant for a valuable consideration. About a month after the filing of the auditor's report, the buildings on the premises, which were insured, were set on fire, and the barn destroyed, and the evidence tended strongly to show that the fire was set by B.'s wife, or by some one else with her knowledge and consent. *Held*, that the evidence was sufficient to warrant the finding that B.'s wife took her title with a view to aid A. and B. in defrauding C. *Held, also*, that the auditor's report, and the circumstances attending the fire on the premises, were admissible in evidence.

WRIT OF ENTRY, dated July 21, 1890, to recover a parcel of land in Southampton. Plea, *nul disseisin*. After the former decision, reported 154 Mass. 429, the case was tried in the Superior Court, before *Dewey*, J. The jury returned a verdict for the demandant; and the tenant alleged exceptions, which appear in the opinion.

*H. W. Ely & C. F. Ely*, for the tenant.

*J. B. O'Donnell, pro se.*

KNOWLTON, J. The demandant is the purchaser of the demanded premises, for a valuable consideration, at a sale made on an execution against George W. Hall and Leander C. Hall, and the question at issue is whether the title of the tenant, obtained by conveyance from George W. Hall and Leander C. Hall to one Stannard, and by another from Stannard to her, is fraudulent as against the creditors of the said George W. and Leander C.

The tenant asked the court to rule that, on the evidence, the demandant could not recover. The question involved in this request was decided adversely to the tenant when the case was formerly before us. *O'Donnell* v. *Hall*, 154 Mass. 429. The evidence was sufficient to warrant the finding that the tenant took her title with a view to aid her husband, Leander C. Hall, and his brother, George W. Hall, in defrauding their creditor, Gilbert M. Hall.

The only other exceptions which are not waived are to the admission in evidence of the auditor's report, and of the circumstances attending the fire which occurred on the premises, on September 26, 1889. It is contended that all the evidence in regard to the fire was incompetent. In determining the question, we must consider the nature of the case. The demandant sought to prove that the conveyance to the tenant was fraudulent, and for that purpose relied solely upon circumstantial evidence. He introduced a great many circumstances, no one of which, taken by itself alone, had much tendency to prove the fraud alleged, but each of which, when taken in connection with all the others, was proper for consideration; and all of which, when taken together, amply warranted the finding that the fraud was proved. Gilbert M. Hall had a claim against his sons, George W. and Leander C., on which he has recovered a judgment for $922.04. The tenant is the wife of Leander C. Hall. George W. and Leander C. had a title as tenants in common to the farm on which the tenant and her husband lived. On February 17, 1888, the attorney of Gilbert M. Hall sent a letter to George and Leander, demanding a settlement of the claim. This letter was handed to the tenant on Saturday, February 18, at about five o'clock in the afternoon. Its contents were made known to George and Leander. On the same evening, Leander left the house and walked sixteen miles to the house of one Stannard, his wife's father. On Sunday, after dinner, he returned home with Stannard in a team belonging to Stannard. On Monday, February 20, George, Leander, Stannard, and the tenant were together at the house, and talked about the purchase by Stannard of the farm. At about seven o'clock on the morning of that day, Stannard, George, and Leander went eighteen miles to Springfield and made a conveyance of the farm from George and

Leander to Stannard, and another from Stannard to the tenant, and returned at eight o'clock that night. Leander went to Northampton by the first train the next morning, and had the deed to Stannard recorded. The deed from Stannard to the tenant, although bearing the same date as the other, was not recorded until March 10, for the reason, as Stannard and the tenant testified, that Stannard took it home with him to Blandford to get it signed by his wife. Gilbert M. Hall brought a suit on his claim against George and Leander, on April 6, 1888, and attached the premises as fraudulently conveyed to the tenant. There was a mortgage on a small portion of the premises when George and Leander took their title, which has not been paid. The parties testified that the deeds made on February 20, 1888, were for a valuable and adequate consideration. The consideration mentioned in each of the deeds was $1,300, and there was evidence that the premises were then worth from $2,100 to $2,500. Stannard testified that he had in his house $500 of the $1,300 which he paid, and that it had been accumulating one and a half or two years, and that he got the balance of the $1,300 from his sister, who was somewhere in the State of New York, but whose address or residence he did not know. He also said that he owned a farm in Blandford, and a part of two other farms. A mortgage was put in evidence from Stannard to one Church, duly recorded, and undischarged, dated March 16, 1886, in which he promised to pay the mortgagee the sum of $800; $100 to be paid on May 1, 1886, $100 on July 1, 1887, and $200 on each 1st of July following, until the whole was paid, with interest annually. Stannard testified that he had no money with which to pay this sum when the mortgage was given, but made the payments on or before the times when each became due. At the time of and before the delivery of the deed to the tenant she had no money or other property but an organ. The tenant and said Leander continued to live on the farm after the conveyances. The evidence excepted to tended strongly to show that the buildings on the premises were set on fire by the tenant, or by some one else with her knowledge and consent. This was about a month after the filing of an auditor's report in favor of the plaintiff in the suit against her husband and his brother, on which the property was attached. Her relations to her husband

and to his brother, and her connection with the previous trans-actions, were such as to warrant the jury in believing that she kept watch of the suit and knew from them of its progress. She had insurance on the buildings.

Now the question is whether the fact of a fire set under such circumstances might be considered by the jury in connection with all the other circumstances in the case, as bearing on the question whether the tenant was then holding under a fraudulent title. Would a jury be warranted in believing that a woman who held real estate under a title fraudulent as against creditors of the former owners, who knew that it had been attached as fraudulently conveyed on a writ in favor of one of these credi-tors, and that an auditor's report in favor of the plaintiff had just been filed in the case, would be any more likely to set fire to the buildings on the premises which were insured as her property, than if she held under an indefeasible title? We are of opinion that they would, and if so, the evidence might prop-erly be considered in connection with the other circumstances, and the jury might say whether or not they thought it added weight to the other facts relied on to establish the claim of fraud. If the tenant knew she was holding under a fraudulent title, she might well expect to lose the property soon after the recovery of a judgment. If by burning the buildings she could obtain the value of them from the insurance company while she held the title, she might succeed in saving to herself the pro-ceeds of most of the property, and in leaving to the creditor little if anything of value above the mortgage then outstanding. If she held under an indefeasible title, she could gain nothing by the burning of the buildings, for she could in no event recover anything more than indemnity for her loss. In the one case, she would have a motive to set the fire, which would not exist in the other.

The fact that considerable time had elapsed between the de-livery of her deed and the fire is immaterial, for there had been no change in her title, except from the effect of the attachment, and the question whether she was holding under a fraudulent title at the time of the fire is the same as the question whether the conveyance to her was fraudulent as against creditors of the grantors when it was made.

It is manifest that the evidence excepted to could not be used for the purpose of inducing the jury to believe that the tenant committed a fraud in taking her title, on the ground that one who commits one crime or fraud would be more likely than ordinary persons to commit another; and the grounds which we have been considering have no relation to this. It was competent to show that the auditor's report had just been filed, in connection with the circumstances indicating that she knew it; for that seemed to bring the plaintiff one step nearer the enforcement of his claim by a sale of the property before it passed from her.

We are of opinion that all these circumstances are proper for the consideration of the jury; not because each, taken by itself alone, had much if any tendency to show fraud, but because, in connection with all the others, they might well be thought by the jury to strengthen the demandant's case. If all the other evidence left the question evenly balanced in the minds of the jury, they might well think her burning her barn and attempting to burn her house under such circumstances were more consistent with a belief on her part that her title was bad, than with a belief that it was good. It was her own conduct, and, so far as it tended to throw light on her relation to the property, it was proper to be considered. It might have turned the scale in favor of the demandant.　　　　　　*Exceptions overruled.*