ELIZABETH J. SUGRUE *et al.* Appellants, *vs.* SHELDON W. CRILLEY, Appellee.

*Opinion filed February 24, 1928—Rehearing denied April 14, 1928.*

1. RES JUDICATA—*when an administration proceeding is not res judicata of question of parentage.* The fact that a party, in the administration of the estate of his alleged father, makes an assignment of any interest he might have to the sister of the deceased, does not preclude him from afterward claiming to be the son of the deceased and the nephew and heir of the sister, where the court in the former proceeding merely acted upon the assignment and made no finding in any proceeding to which the claimant was a party that he was not the son of the deceased.

2. SAME—*judgment in rem is not conclusive against strangers as to incidental facts upon which it is based.* While a judgment *in rem* is conclusive as against all the world in regard to the particular matter or status established by it, it is not conclusive against strangers to the record as an adjudication of incidental facts upon which it is founded.

3. WILLS—*when judgment probating will is not conclusive as a finding as to parentage.* A judgment of a probate court in another State establishing a will and ordering it probated operates only upon the *res,* and a finding that the sole beneficiary is the son of the deceased is merely incidental to the primary object of the proceeding and does not preclude said beneficiary from afterwards denying that he is the son of the deceased and claiming heirship by another parentage in the administration of an estate in Illinois.

4. DESCENT—*when presumption of parentage arises—burden of proof.* Where a person claims heirship through a certain alleged father and the evidence shows that the claimant's mother was lawfully married to the alleged father at the time the claimant was born and that the marriage relation had existed unbrokenly for five years previous thereto, the presumption arises that the husband was the father of the claimant, and those undertaking to disprove such parentage have the burden of proving their claim by clear and conclusive evidence.

5. SAME—*general rule as to when declaration as to pedigree is admissible.* Pedigree may be proved by hearsay evidence, but a declaration concerning kinship reproduced as hearsay, to be admissible, must have been made by a person, since deceased, before any controversy arose and who was related by blood or affinity to some branch of the family the pedigree of which is in question.

6. SAME—*reason of rule excluding declarations as to pedigree after controversy has arisen.*  Declarations as to pedigree are admissible only when the circumstances show they are the natural effusions of a party who is in a position to know the truth and who speaks when his mind is free from bias and without temptation to exceed or fall short of the truth; and declarations made after a controversy arises concerning the parentage of a child are not admissible, as they lack the guaranty of trustworthiness which is present when the declarant is free from inducement to misrepresent the facts.

APPEAL from the Circuit Court of Cook county; the Hon. KICKHAM SCANLAN, Judge, presiding.

ANDREW R. SHERRIFF, and GRANVILLE W. BROWNING, for appellants.

WERNER W. SCHROEDER, MAX KRAUSS, OTTO ULRICH, and SOUTH METZGER, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is from a judgment of the circuit court of Cook county in a proceeding under section 2 of an act to declare the heirship of deceased persons, (Smith's Stat. 1927, p. 93,) which declares that appellee, Sheldon W. Crilley, is the nephew and only heir of Mary Crilley Sterling French, decedent.  The case originated in the probate court of Cook county and the finding there was the same.  The appeal is prosecuted to this court by Elizabeth J. Sugrue and Margaret McKay, appellants, who are first cousins of decedent, on the ground that a constitutional question is involved.

John James Crilley, the only brother of decedent, was married April 30, 1887, to Annie McDonald, the mother of appellee.  Appellee was born August 18, 1892, at the home of Annie's parents in Lubec, Maine.  In the fall of 1893 Annie took her baby and went to Winthrop, Massa-

chusetts, where she began living with Sheldon W. Cook. Appellee remained in this home as a member of the family and was recognized by Cook and known in the community as his son. Crilley died December 2, 1907, Annie Crilley July 18, 1908, and Sheldon W. Cook January 23, 1917.

When J. J. Crilley died he left a small estate, consisting principally of bank deposits, totaling about $2000. About six months after his death his sister began proceedings in the probate court of Middlesex county, Massachusetts, to administer his estate and filed a petition to have herself appointed administratrix. In this petition she stated that he left a widow, Annie, and a son, Sheldon, as his only heirs. She questioned the paternity of Sheldon, and employed a Boston attorney, F. G. Cook, to represent her. Upon investigation he learned that Crilley's wife had left him about the time a son was born to her, and that subsequently she lived with S. W. Cook, an insurance solicitor, as his wife. The attorney visited S. W. Cook at his office and from him ascertained that Crilley's wife had survived Crilley but that she died about six months after his death. After this interview attorney Cook went to Lubec, Maine, where he found a birth certificate showing the birth of Sheldon W. R. Crilley on August 18, 1892. This investigation was completed in 1911, when Sheldon was about nineteen years old. S. W. Cook believed Sheldon to be his son and had treated him as such from birth. He was anxious to establish that Sheldon was his son, and he did not want him to receive, directly or indirectly through his mother, any of the estate of Crilley. He began proceedings April 2, 1912, to administer the estate of Annie Crilley Cook, and stated in his petition that she left surviving as her only heirs, Sheldon W., her husband, and Sheldon W., a minor son. April 25, 1912, he filed in the Crilley estate an affidavit as administrator of the estate of Annie Crilley Cook, suggesting to the court that Crilley did not leave a son named Sheldon, and that his only heir and next of kin was Mary Crilley Sterling

French. In the fall of 1913, after Sheldon had reached his majority, in order to carry out the plan to disclaim any interest in the estate of John J. Crilly, he executed an assignment to Mary French of all interest which he might have in the money received by the estate of his mother from the estate of Crilley, and he also executed an assignment to the administrator of the estate of Annie Crilley Cook of all interest which he might have in the estate of Crilley, stating that he was the person referred to as Sheldon Crilley in the petition filed June 16, 1909, in said estate. After these assignments were executed both estates were closed.

Appellants contend that in these proceedings it was adjudged that Sheldon is not the son of John J. Crilley, and that under the full faith and credit clause of the Federal constitution the courts of Illinois are bound by this adjudication. Aside from the legal questions involved, this contention is without merit because the court did not find that Sheldon was not the son of Crilley. In each case Sheldon made an assignment to Mary French of whatever interest he had in the estates, and the court in each instance acted upon this assignment. Attorney Cook says that these documents were signed September 25, 1913, after full explanation of the contents and effect. Sheldon says they were signed in 1911 at the direction of S. W. Cook and without his knowledge of their contents. Whatever the facts, it is clear that these documents are not binding except with respect to the closing of the estates in which they were filed. The most that can be said for them is that they are admissions against interest, but under the circumstances little weight should be attached to these admissions.

When Sheldon W. Cook died he left a will, in which he referred to Sheldon as his son and made him the chief beneficiary of his estate. Sheldon qualified as executor under the name Sheldon W. Cook, and in the petition to admit the will to record designated himself as a son and heir of Sheldon W. Cook, deceased. The will was proved and let-

ters testamentary were issued to Sheldon and distribution was made in accordance with the will. It is contended that in this proceeding it was adjudicated that Sheldon is the son of Cook and that this adjudication is binding upon the courts of this State. Conceding that it was necessary to find that Sheldon was the son of Cook in order to admit the will to record and distribute the estate accordingly, it does not follow that that finding estops Sheldon to show the truth in another proceeding. What the court decided was that it had jurisdiction of the estate of Cook, that Cook's will was entitled to be admitted to record, and that the persons named in the will were entitled to the property of which Cook died possessed. The finding that Sheldon was Cook's son, if such a finding was made, was only incidental to the primary object of the proceeding, which was the distribution of the estate of Cook. So far as the adjudication operated on the *res,* the judgment concluded both the parties to the proceeding and all others, but the findings upon which the judgment was predicated do not conclude strangers to the record. (*American Woolen Co.* v. *Lesher,* 267 Ill. 11; *Mosier* v. *Osborn,* 284 id. 141; *Overby* v. *Gordon,* 177 U. S. 214, 20 Sup. Ct. 603; *Luke* v. *Hill,* 137 Ga. 159, 38 L. R. A. (n. s.) 559; *Shores* v. *Hooper,* 153 Mass. 228, 26 N. E. 846; *Brigham* v. *Fayerweather,* 140 Mass. 411, 5 N. E. 265; *Hilton* v. *Snyder,* 37 Utah, 384, 108 Pac. 698.) A judgment *in rem* is an act of the sovereign power and as such its effect cannot be disputed—at least not within the jurisdiction. If a competent court declares a vessel forfeited, or orders it sold free from all claims, or divorces a couple, or establishes a will under the statutes, a paramount title is passed, the marriage status is dissolved, or the will is established as against all the world, whether parties or not, because the sovereign has said it shall be so; but the judgment is not conclusive upon strangers to the record as an adjudication of incidental facts upon which it is founded. The general principle is thus stated by Sir

James F. Stephen in his work on Evidence: "Statements contained in judgments as to the facts upon which the judgment is based are deemed to be irrelevant as between strangers or as between a party or privy and a stranger," noting certain exceptions immaterial here. We are aware of no proceeding by which one may establish his status as an heir *in rem*. Sheldon could not use the order entered in the Cook estate to prove that he is the son of Cook, and so it cannot be used against him for that purpose. The courts of Illinois are certainly not bound to declare as a fact that which is not a fact merely because a court of Massachusetts has found the fact in a proceeding where it was only incidentally involved. The issue in the case at bar is, Who are the heirs of decedent? It incidentally involves the parentage of Sheldon, and that incidental question is open for consideration in the courts of Illinois regardless of what may have been decided on the same question in the settlement of some other estate.

Sheldon enlisted in the army of the United States in 1916 and at that time stated that Sheldon W. Cook was his father. He served in France during the World War, and later the State of Massachusetts provided by law for the payment of a gratuity to its citizens who had served in the American Expeditionary Forces. July 30, 1919, Sheldon made application, under oath, for this gratuity, and in his application stated that his mother was dead and that his father was Sheldon W. Cook, of Winthrop, Massachusetts. This proves nothing except that he assumed Cook was his father, and under the circumstances of this case that assumption was fully justified.

A proceeding was brought in Maine by Cook to administer the estate of Sheldon's mother, and in this proceeding it was alleged that Cook was her surviving husband and Sheldon her son. All that was found in that case concerning the parentage of Sheldon was that he was the son of Annie. The relation of Sheldon to Cook was not in

question and there was no adjudication upon it. *Stone v. Salisbury*, 209 Ill. 56.

At the time Sheldon was born his mother was lawfully married to John J. Crilley and that state had continued for more than five years. Under such circumstances the presumption is that her husband was the father of her child, (*Drennan v. Douglas*, 102 Ill. 341; *Robinson v. Ruprecht*, 191 id. 424;) and those undertaking to disprove such parentage have the burden of producing evidence to prove their charges, (*Zachmann v. Zachmann*, 201 Ill. 380,) which evidence must be of such quality and quantity as to establish the charge clearly and conclusively. (*Orthwein v. Thomas*, 127 Ill. 554.) Appellee does not rely upon this presumption but produces the testimony of Phœbe McDonald Saunders, a sister of his mother, and of Anne McDonald, wife of his mother's brother, Ronald. These women were about fifteen years old when appellee was born and were employed in a sardine cannery, the chief industry of Lubec. Both women testify that they lived in the McDonald home in 1891 and 1892; that Annie McDonald Crilley and her husband visited the McDonald home in the fall of 1891 and remained there until near the first of December; that they occupied the front bed-room on the second floor; that the Crilleys returned to the McDonald home in 1892 and that John was present when appellee was born. There is also in evidence a number of letters written by decedent which show that she recognized Sheldon as the son of her brother. In a letter dated Park Ridge, Illinois, December 6, 1906, she writes him urging him to release to her a legacy which has been made to him by a friend, and during the course of the letter she says: "You know, John, you have a son that has a claim on anything that is yours. Of course, you have told me you don't believe he is your child, but the fact is you were living with your wife at the time he was begot and recognized him as your child after his birth. And another thing, it looks bad for you to have urged her to go

home or to leave your home at the time she was confined. * * * Whether she is divorced or not makes no difference in the boy's claim. He is your son in the eyes of the law unless you have indisputable proof. Just your unsupported word would not be enough. Another thing, if she was a faithless wife, as you think, the fact that you lived with her after that condoned her offense, and she can· easily prove by all her friends at her home that you recognized the child as yours." According to its date this letter was written when Sheldon was fourteen years old and had been living in the home of Cook for thirteen years.

As against this evidence appellants offered to prove by F. G. Cook what Sheldon W. Cook had told him in November, 1911, when he confronted him with the fact that proceedings had been begun to administer the estate of John J. Crilley and that Sheldon had been named as a son and heir of Crilley. Pedigree may be proved by hearsay evidence, but it seems to be well settled that a declaration concerning kinship reproduced as hearsay, to be admissible, must have been made by a person, since deceased, before a controversy arose, and who was related by blood or affinity to some branch of the family the pedigree respecting which is in question. (*Jarchow* v. *Grosse*, 257 Ill. 36; *Aalholm* v. *People*, 211 N. Y. 406, L. R. A. 1915-D, 215.) While the authorities are not in harmony respecting all of the elements of this rule, there seems to be no difference of opinion upon the proposition that such declarations are admissible only when the circumstances show they are the natural effusions of a party who is in a position to know the truth and who speaks upon an occasion when his mind is free from bias and without temptation to exceed or fall short of the truth. (3 Wigmore on Evidence,—2d ed.—sec. 1483; 2 Jones' Commentaries on Evidence, sec. 312; *Metheny* v. *Bohn*, 160 Ill. 263.) Declarations made after a controversy concerning the parentage of a child arises lack the guaranty of trustworthiness which is present when the declarant

329—30

is free from inducement to misrepresent the facts. Under such circumstances they are subject to a strong suspicion that the declarant is making evidence to serve his own ends. While the controversy must be such as to justify the conclusion that the mind of the declarant is not free from bias, it is not necessary that litigation should have actually begun. When Sheldon W. Cook told his story of his relations with Sheldon's mother from 1891 to the date of her death he faced a situation which might cause suffering to the boy he loved and regarded as his own son and which might expose himself to the contempt of his neighbors and associates. He had every motive for exaggerating the facts which would show Sheldon to be his son and which would minimize the facts tending to show that he might be the son of Crilley. Litigation was then actually pending which would necessarily involve the parentage of Sheldon. Under these circumstances all of the authorities exclude such hearsay testimony.

There are other bits of evidence in the record, but if full credit be given to all of the competent evidence which to any degree tends to prove that Sheldon is the son of Cook, it is not enough to overcome the direct and positive evidence that Crilley was the lawful husband of Sheldon's mother at the time he was born and that he had access to her at the time when, according to the laws of nature, the mother became pregnant. The competent evidence in this record clearly establishes that Sheldon is the son of John J. Crilley and therefore the nephew of decedent.

There is nothing in the judgments of the courts of Massachusetts or Maine to bar the judgment entered in this case, and it is therefore affirmed. *Judgment affirmed.*